# Richmond.

## SMITH v. BRYAN, MAYOR.

January 30, 1902.

Absent, Cardwell and Buchanan, JJ.

1. STATE OFFICERS—*Policemen—Removal—Roanoke City—Art. VI., Sec. 20, Constitution.*—A police officer is an officer of the State, and not of the municipality in which he exercises his office. The right, therefore, of the Mayor of the city of Roanoke to remove a policeman of said city is unaffected by Art. VI., sec. 20, of the Constitution, or by sec. 54 of the charter of said city, both of which apply only to power of the Mayor over municipal officers.

2. OFFICIAL TENURE—*During Good Behavior—Or Until Removed.*—An official tenure "during good behavior" is for life, unless sooner determined for cause; and a removal for cause implies a right to be heard, and a trial in some form. But a tenure "during good behavior or until removed by the Mayor" is a tenure at the will of the Mayor.

3. STATUTES—*Construction—Every Part to be Made Effective.*—That construction of a statute is favored which gives effect to every clause and part thereof; and a construction which discards any part of a sentence must be rejected, if it be practicable to give effect to the entire sentence.

4. STATUTES—*Construction—Usual Construction—Practical Construction.*—If a statute is of doubtful import, a court will consider the construction put upon the act when it first came into operation, and that construction, after lapse of time, without change either by the Legislature or judicial decision, will be regarded as the correct construction. So, also, the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect as a course of judicial decision.

5. STATUTES—*Construction—Official Terms—Shortest Term.*—If a statute

fixing the duration of an official term is ambiguous, it must be so construed as to limit the term to the shortest period.

Error to a judgment of the Hustings Court of the city of Roanoke, rendered October 1, 1900, on a petition for a *mandamus*, wherein the plaintiff in error was the plaintiff, and the defendant in error was the respondent.

*Affirmed.*

The opinion states the case.

*E. Lyle, Hoge & Hoge* and *Scott & Stringfellow,* for the plaintiff in error.

*C. B. Moomaw,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This controversy has arisen out of a denial, by the Hustings Court of the city of Roanoke, of the prayer of the petition of the plaintiff in error, C. A. Smith, for a peremptory writ of *mandamus* to compel the defendant in error, J. R. Bryan, Mayor, to restore petitioner to the police force of that city, from which, as the petitioner alleges, he had been illegally discharged

The evidence was not certified, but it appears from the pleading that the litigation involves the tenure of office of the plaintiff in error as a policeman. The solution of that question depends upon the proper construction of section 60 of the "New Charter of Roanoke City," which is as follows:

"The Mayor shall be authorized to appoint a Chief of Police, and such number of policemen as may be prescribed by the Council, which appointments shall be reported to the Council at the next regular meeting thereof, and, if approved by it, they shall be confirmed. Such chief and policemen shall constitute the police force of said city, and shall hold their respective positions during good behavior, or until they may be severally removed by the Mayor, or by three-fifths vote of the Council, after

notice to, and failure of, the Mayor to act, after having been re-
quested to do so by the Council.

"The police force shall be under the control of the Mayor for
the purpose of maintaining peace and order and executing the
laws and ordinances of the city, and shall perform such duties
as the Council may prescribe.

"For the purpose of enabling it to execute its duties and
powers, each member of the police force is hereby made and
constituted a conservator of the peace, and endowed with all
the powers of a constable in criminal cases, and all other powers
which, under the laws of the city, may be necessary to enable
him to discharge the duties of his office. The uniforms, rules
and regulations of the force shall be prescribed by the Mayor,
and approved by the Council. The pay of all policemen shall
be prescribed by the Council."

In the case of *Burch* v. *Hardwicke*, 30 Gratt. 24, this court
held that a police officer is an officer of the State, and not of the
municipality in which he exercises his office.

It follows, therefore, that section 20, of Article VI., of the
Constitution of Virginia, prescribing the powers and duties of
a mayor, including the power to suspend and remove *city officers*,
and designating the procedure in such cases, has no application
to city police.

It also appears that section 54 of the charter in question
does not embrace policemen. Under the title "Mayor," that
section provides, among other things, that he shall have power
to remove or suspend any municipal officer, whether he be
elected by the qualified voters of the city, or by the Council,
"for misconduct in office or neglect of duty, to be specified in
the order of suspension or removal; but no such removal shall
be made without reasonable notice to the officer complained of,
and an opportunity afforded him to be heard in his defence.
Whenever the Mayor shall remove or suspend any such officer,
he shall report the facts to the Council at the next regular meet-

ing, but in no case shall such removal be final until ratified by a majority of the whole Council; provided, however, that nothing in this section shall be construed as authorizing the Mayor to remove the Sergeant of said city, or his deputies the power and authority to remove said Sergeant and deputies being hereby confined exclusively to the Hustings Court of the city of Roanoke; said court being hereby empowered to remove, after reasonable notice, and an opportunity given to be heard, said sergeant or any of his deputies for malfeasance in office."

This section, it will be observed, in terms applies to such municipal officers as are elected by the qualified voters of the city, or by the Council; and, as has been remarked, policemen are not municipal officers, nor are they elected by the qualified voters of the city, or by the Council, but are appointed by the Mayor and confirmed by the Council. The question at issue is, therefore, not affected by either Article VI., sec. 20, of the Constitution, or by the provisions of section 54 of the charter.

The part of section 60 to be interpreted is: "Such chief and policemen shall constitute the police force of said city, and shall hold their respective positions during good behavior, or until they may be severally removed by the Mayor, or by three-fifths vote of the Council, after notice to and failure of the Mayor to act, after having been requested to do so by the Council."

It was insisted on behalf of plaintiff in error that, by a proper construction of the foregoing provisions, his tenure to the office of policeman is during good behavior, and imports, as an essential element, non-removability except for cause.

This would be true, if the language "during good behavior" stood alone, or is permitted to dominate the entire sentence. In other words, if that language is to be accepted, and the rest of the sentence rejected as surplusage. But no authority has been produced to sustain that contention. On the contrary, that construction is favored which gives effect to every clause and

every part of a statute; and a construction which would discard any part of a sentence must be rejected, if it be practicable to give effect to the entire sentence.   Sedwick's Stat. Law, 199.

An official tenure "during good behavior" is for life, unless sooner determined *for cause*.  And removal *for cause* implies a right to be heard, and a trial in one form of procedure or another.

There is no warrant for the contention that the language, "during good behavior," and "during good behavior or until removed by the Mayor, or by a three-fifths vote of the Council after notice to and failure of the Mayor to act after having been requested by the Council to do so," are equivalent terms; or that the portion of the sentence last quoted, which follows the disjunctive conjunction "or," is a legal implication that attaches to all official tenures.  Removal from office is such an incident, but removal from office by the special agencies designated in this statute, is not a necessary incident.

The sentence, in its entirety, imports an official tenure during good behavior, but subject, nevertheless, to the limitation that the Mayor or City Council (should the former fail to act on request), shall have the absolute power of removal.  This practically constitutes the tenure *quoad* the authorities named, a tenure *at will*; but forbids, as an implied incident to the higher tenure, the removal of a policeman by any other authorities than those designated, except *for cause*.

If it had been the intention of the Legislature to limit the power of removal in the Mayor and Council, to removals *for cause*, it is reasonable to presume that there would have been an express declaration to that effect, as was the case in respect to the officers enumerated in section 54 of the charter.

This interpretation is strengthened, also, by the conceded fact that it had been the universally accepted construction by the community, and had been acted on by every Mayor who presided over the city from the year 1892, at which time the provision in question was first incorporated in the amended

charter (Acts 1891-2, p. 314). Subsequently, it was, without change, and presumably in the light of that construction, carried into the Act of February 28, 1896, which provided a new charter for the city of Roanoke (Acts 1895-6, p. 561, sec. 60). It is a rule of construction that, if a statute is of doubtful import, a court will consider the construction put upon the act when it first came into operation, and that construction, after lapse of time, without change either by the Legislature or judicial decision, will be regarded as the correct construction. Sutherland on Stat. Con., sec. 307; *Anable* v. *Com.*, 24 Gratt. 563, 566; *Lewis* v. *Whittle*, 77 Va. 415, 422; *Mangus* v. *McClelland*, 93 Va. 786, 789.

So, also, the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The Legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction.

Contemporaneous construction, and official usage for a long period by persons charged with the administration of the law, have always been regarded as legitimate aids in the construction of statutes. Sutherland on Stat. Con., sec. 309.

Plaintiff in error accepted his appointment presumably with knowledge of the limitations affixed to his tenure by the construction referred to. He therefore took subject to that construction, and cannot now be permitted to insist upon a different construction.

Formerly, the Circuit Superior Courts were allowed to appoint their own Commonwealth's attorneys and clerks, and it was held that the tenure of these officials was during the pleasure of the respective courts, and that such courts might remove them from office, and appoint others to succeed them, without assigning any reason for the removal. That the absolute power

of removal was incident to the power of appointment. An interesting discussion of that subject will be found in *Bouldin's case*, 6 Leigh, 639.

Another rule of construction is that, if a statute fixing the duration of an official term is ambiguous, it must be so construed as to limit the term to the shortest period. The application of that principle to the case at bar would necessitate a rejection of the former, rather than of the latter portion of the sentence under consideration, and an interpretation that the tenure of a policeman is not during good behavior, but at will. *Wright* v. *Adams*, 45 Texas, 134.

If the court is at liberty, in construing this statute, to rely with any degree of confidence upon considerations of policy and expediency, such considerations are by no means all on the side of plaintiff in error.

The suggestion made by the court in *Burch* v. *Hardwicke*, *supra*, that if the police force is made dependent upon the will of the Mayor, in populous cities it might become a dangerous political engine for mischief in time of high political and party excitement, would seem to be rather imaginary than real in a city of the size of Roanoke. Besides, the shortness of the Mayor's term, the restraining influence of public opinion, and the certainty of defeat at the ensuing election, would seem to afford sufficient safeguards against an abuse of the power of removal.

On the other hand, if the construction contended for by counsel for plaintiff in error is correct, the conditions would be, indeed, anomalous. The Mayor with an official tenure of two years, would be surrounded by a corps of policemen with life tenures determinable only *for cause.* He is *ex-officio* the chief executive officer of the city, upon whom is devolved the duty of upholding and enforcing the laws and ordinances, and all resolutions of the Council. He is in close touch with and a constant witness of the manner in which policemen perform their duties,

and the best judge of their qualification. They are the instrumentalities upon whose loyalty and efficiency his ability to enforce the law, to suppress crime, to maintain the peace and good order of the community, and to discharge the other functions of his important office, must largely depend. To invest these officials with life tenures would deprive an incoming Mayor of the power of selecting his own subordinates, would practically place them beyond his control, and render effective discipline in that department of the city government impossible, and would tend to paralyze the arm of the executive.

It is believed that these considerations, and others that might be mentioned, outweigh any possible mischiefs that are likely to result from investing the Mayor with the absolute power of appointing and removing his subordinates.

The policy of the Legislature in such matters is manifested by the fact that in the charter of the city of Richmond the Chief of Police is invested with the absolute power to remove policemen, being only required to report the reasons for his action to the Board of Police Commissioners. And like provisions are to be found in the charters of many of the other cities and towns of the Commonwealth.

For the foregoing reasons, the judgment of the Hustings Court of Roanoke City must be affirmed.

*Affirmed.*