CARLOS M. DE CASTRO, Petitioner and Appellant, *v.* BOARD OF COMMISSIONERS OF SAN JUAN, Respondent and Appellee.

No. 8070. Argued December 9, 1941.—Decided January 14, 1942.

674

R. Rivera Zayas, Gabriel de la Haba, and Damián Monserrat, Jr., for appellant.  F. Fernández Cuyar and H. González Blanes for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

On April 11, 1939, Dr. Carlos M. de Castro filed, in the District Court of San Juan, a petition for certiorari to review and annul a certain resolution of the Board of Commissioners of San Juan, dated the 5th of the same month and year, to take effect as from January 7, 1939, whereby he was removed from the office of City Manager of the Capital, to which he had been appointed by said board on January 4, 1937.  The petition having been denied by a judgment of August 21, 1939, the petitioner appealed to this court, which, on June 28, 1940, reversed the judgment appealed from and in lieu thereof rendered another, the dispositive part of which in so far as now pertinent reads thus:

". . . and in its stead a new one is rendered, annulling Ordinances No. 30 of January 5, 1939, and No. 373, of April 5, 1939, which decreed the suspension and removal of the City Manager of the Capital, and it is ordered that the petitioner Carlos M. de Castro be reinstated in his office of City Manager of the Capital, said reinstatement to date back from January 5, 1939, when the petitioner was suspended from office and pay."  (57 P.R.R. 149.)

Feeling aggrieved by that decision, the Board of Commissioners took an appeal to the United States Circuit Court of Appeals for the First Circuit, which affirmed the judgment of this court on October 20, 1941, and a petition for certiorari, filed by the Board of Commissioners, to review such affirmance was denied by the Supreme Court of the United States.

After the receipt of the mandate in this court, the Board of Commissioners, on October 27, 1941, filed in this court a lengthy motion, notice of which was duly served on the attorneys for the petitioner-appellant, praying that we issue an order decreeing that our judgment of June 28, 1940, can not be enforced in so far as it directs the reinstatement of the petitioner Carlós M. de Castro .in the office of City Manager of the Capital, the term for which he was appointed having expired since January (*sic*) of 1941. The petitioner objected by a motion which he filed on the 4th of last November, and the controversy was submitted at a hearing which was held for that purpose on the 1st of last month.

In opposing the motion of the Board of Commissioners, the petitioner Dr. De Castro maintains that the term of the office of City Manager of the Capital is for life, during good behavior; that the questions raised by the respondent board regarding the duration of the office of City Manager of the Capital were determined by this court in its judgment of June 28, 1940, which is final (*firme*) and enforceable (*ejecutoria*); and, lastly, that we lack jurisdiction to stay the execution of a final judgment as to a matter which has the character of *res judicata*.

■ Contrary to the assertion of counsel for the petitioner Dr. De Castro, the duration or term of the office of City Manager of the Capital was not made the subject of any pronouncement in the judgment of this court of June 28, 1940, nor was it even mentioned in the opinion. It could not be otherwise, as that question was not and could not be

in issue, for Dr. De Castro having been appointed on January 4, 1937, when the hearing of the certiorari proceeding instituted by him in the District Court of San Juan was held, when that court rendered its judgment on August 21, 1939, and when the judgment of this court of June 28, 1940, was entered, the term of four years for which, as claimed by the Board of Commissioners, he was appointed had not yet expired. The only thing settled within said proceeding were the charges filed against the petitioner, and nothing else. Therefore, the question now discussed has not the character of *res judicata.*

Neither in his motion of opposition nor in the memorandum which he subsequently presented, on the first of last month, does the petitioner set forth any lawful ground to support his theory that this court lacks jurisdiction to consider and determine this controversy.

The judgment whose enforcement is under consideration was rendered by this court in lieu of the one that had been entered by the District Court of San Juan, and the question now raised by the board involves an incident relating to the execution of that judgment in the light of facts and circumstances which have occurred subsequent to the date on which it was rendered. At that time, as we have seen, the term of four years for which, according to the board, the petitioner was appointed had not yet expired; but now when the question of executing said judgment arises it is urged that that term has lapsed. If we were to hold accordingly that the term for which he was appointed expired last year, or to be more precise, on the second Monday in February, 1941 (Sec. 50 of Act No. 99 of 1931, as amended by Act No. 10 of 1937, Session Laws, p. 131), would it not be contrary to law and justice that the petitioner, taking advantage of the terms of the judgment, should procure his reinstatement in an office to which he is not entitled? Foreseeing that eventuality the law, which does not conceive a wrong to be without a rem-

edy, confers on this court the power to grant it when it provides by subdivision 8, Section 7, of the Code of Civil Procedure, that every court has power to amend and control its process and orders so as to make them conformable to law and justice. See by analogy *McAuliffe* v. *Coughlin,* 105 Cal. 268; *Rowe* v. *Blake,* 112 Cal. 637, 643.

▆▆▆▆ The foregoing questions having been disposed of, we now proceed to discuss and decide the one relating to the term of the office of City Manager of the Capital.

Although the National Constitution does not prohibit it, the only offices held by a life tenure in the Federal Government are those of judges. The Constitution so provided in order to guarantee the independence of the National Judiciary. The other federal offices, where that need is not present, do not enjoy that privilege. Thus the life tenure of office is the exception; hence the universally accepted rule of interpretation which provides that the term of an office shall not be considered as for life unless the intention of the legislature to that effect is so evident that it leaves no room for doubt. In case of doubt, it will be considered that the term of office is the shortest one within a reasonable interpretation.

The contention of the petitioner is principally based on Section 21 of the cited Act No. 99 of 1931 (Sess. Laws, p. 626) which textually reads as follows:

"Sec. 21. The City Manager shall be the chief executive of the Capital; he shall be appointed by the Board of Commissioners created by this Act and *shall hold office during good conduct.*" (Italics ours.)

In the case of *Shurtleff* v. *United States,* 189 U. S. 311, cited by counsel for the Board of Commissioners, there was involved the interpretation of a federal statute, section 12 of which reads thus:

"Sec. 12. That there shall be appointed by the President, by and with the advice and consent of the Senate, nine general appraisers

of merchandise, each of whom shall receive a salary of seven thousand dollars a year. Not more than five of such general appraisers shall be appointed from the same political party. They shall not be engaged in any other business . . ., *and may be removed from office at any time by the President for inefficiency, neglect of duty, or malfeasance in office. . .''* (Italics ours.)

Shurtleff had been appointed to one of said offices on July 17, 1890, and continued to hold such office until May 3, 1899, when without any previous preferment of charges, he received a communication from President McKinley removing him from office, to take effect upon the appointment and qualification of his successor. Shurtleff contended that because the statute specified certain causes for which the officer might be removed, it thereby impliedly excluded the right to remove him for any cause other than one of those specified in the statute, and he invoked, by way of illustration, the maxim *expressio unius est exclusio alterius.*

The Supreme Court of the United States, in upholding the action of the President, said:

''. . . We are of opinion that as thus used the maxim does not justify the contention of the appellant. We regard it as inapplicable to the facts herein. The right of removal would exist if the statute had not contained a word upon the subject. It does not exist by virtue of the grant, but it inheres in the right to appoint, unless limited by Constitution or statute. It requires plain language to take it away. Did Congress by the use of language providing for removal for certain causes thereby provide that the right could only be exercised in the specified causes? If so, see what a difference in the tenure of office is effected as to this office, from that existing generally in this country. The tenure of the judicial officers of the United States is provided for by the Constitution, but with that exception no civil officer has ever held office by a life tenure since the foundation of the government. Even judges of the territorial courts may be removed by the President. (Citation.) To construe the statute as contended for by appellant is to give an appraiser of merchandise the right to hold that office during his life or until he shall be found guilty of some act specified in the statute. If this be true, a complete revolution in the general tenure of office is

effected, by implication, with regard to this particular office. We think it quite inadmissible to attribute an intention on the part of Congress to make such an extraordinary change in the usual rule governing the tenure of office, and one which is to be applied to this particular office only, without stating such intention in plain and explicit language, instead of leaving it to be implied from doubtful inferences. The rule which is expressed in the maxim is a very proper one and founded upon justifiable reasoning in many instances, but should not be accorded controlling weight when to do so would involve the alteration of the universal practice of the government for over a century and the consequent curtailment of the powers of the executive in such an unusual manner.''

Further on, in the course of its opinion, the Court said:

''. . . We cannot bring ourselves to the belief that Congress ever intended this result while omitting to use language which would put that intention beyond doubt.''

If we interpret section 21, *supra,* in connection with the other provisions of the statute, specially section 39, as required by the rules of construction, the doubt regarding the intention of the legislator increases. The latter legal provision in its pertinent part reads as follows:

''Sec. 39. All appointments of employees shall be made by the respective officers, according to the department of the Capital in which they render services. *Said employees shall be appointed for the term for which each officer is appointed.* The employees of the Capital may be removed for just cause by the officer appointing them, after a hearing and an opportunity to defend themselves. . . .'' (Italics ours.)

Were we to hold that the term of the office of City Manager of the Capital is for life, then we would be faced with the following anomalies:

(1) The Treasurer of the Capital, the Director of Public Works, the Director of Health and Charities, the School Director, and the Secretary of the Capital, who according to section 26 must be appointed by the City Manager of the Capital, could be appointed for a limited term which the City

Manager might designate, whilst an employee in the office of the City Manager of the Capital, say, for example, the messenger of his office, due to the fact of his being appointed by the City Manager, would hold his employment during his life unless sooner removed for just cause.

It could not have been the intention of the lawmaker to establish such an absurd difference between the official term of an employee and the tenures of officers so important as those enumerated in section 26, *supra*.

(2) An unjustified discrimination would then exist between the employees appointed by the officers of the Government of the Capital and the employees appointed by the City Manager since the former would be appointed for the duration of the term of office of the appointing official, whereas the official term of the employees appointed by the City Manager would be for life.

In the case of *Smith* v. *Bryan*, 40 S. E. 652, 654, the Supreme Court of Appeals of Virginia said:

It is a rule of construction that, if a statute is of doubtful import, a court will consider the construction put upon the act when it first came into operation, and that construction, after lapse of time, without change either by the legislature or judicial decision, will be regarded as the correct construction. Suth. St. Const., par. 307; *Anable* v. *Com.*, 24 Grat. 563–566; *Lewis* v. *Whittle*, 77 Va. 415, 422; *Mangus* v. *McClelland*, 93 Va. 786, 789, 22 S. E. 364.

"So, also, the practical construction given to a statute by public officials and acted upon by the people, is not only to be considered, but in cases of doubt will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction.

"        *        *        *        *        *        *        *

"Plaintiff in error accepted his appointment presumably with knowledge of the limitations affixed to his tenure by the construction referred to. He therefore took subject to that construction, and cannot now be permitted to insist upon a different construction."

In our judgment, it is not a question beyond doubt that the legislative intention was that the term of office of the City Manager should be for life, and in view of such doubt, in accordance with the decisions, the term to be chosen must be the shortest one: that of four years, which is at least that of the majority of the Board of Commissioners that appointed him.

On this point a well-known writer says:

"Where the legal provision prescribing the term is uncertain or doubtful, an interpretation will be adopted which limits the term to the shortest time." McQuillin, Municipal Corporations, 2d ed., 1939, vol. 2, p. 219.

See to the same effect the monograph in 135 A.L.R. 1173, 1175, and the cases of *Aggeler* v. *Dominguez,* (1933) 217 Cal. 429, 19 P. (2) 241; *Lowrie* v. *Brennan,* (1937) 283 Mich. 63, 276 N. W. 900; *Chamski* v. *Cowan,* (1939) 288 Mich. 238, 284 N. W. 711; *Dobkins* v. *Reece,* (1929, Tex. Civ. App.) 17 S. W. (2) 81.

The political parties of this island have always interpreted this act in the sense that the term of office of the City Manager of the Capital is four years, and ever since section 50 thereof was amended in 1937, the second Monday in February following each general election is the time when the Board of Commissioners appoints him. [4] The courts take judicial notice of matters of common knowledge, and the identity of the candidates of the various political parties for the office of City Manager of the Capital at the last two general elections is a matter of common knowledge, at least among the inhabitants of this city and particularly among the voters. See, on the question of judicial notice, 9 Wigmore on Evidence (3rd ed., 1940), section 2571, p. 548; *City of Birmingham* v. *Martin,* 153 So. 235; *Byrne* v. *Scipio et al.* (N. J., 1937) 19 Atl. 444. So we take judicial notice of the fact that the petitioner was the candidate of the Coalition of the Union Republican and Socialist Parties for City

Manager of the Capital at the general election held in 1936, his contestant, candidate of the Puerto Rican Liberal Party, being Dr. M. Pavía Fernández. Likewise it is a matter of common knowledge in this city that at the general election held in 1940, the candidate of the Coalition of the Union Republican and Socialist Parties for said office was Mr. Fernando Géigel, that of the Democratic Popular Party was Mr. F. Benítez Rexach, and that of the Tripartite Puerto Rican Unification Party was Mr. R. Ramos Cobián; and that the party first above named having won the last election held, the Board of Commissioners appointed Mr. Géigel as City Manager of the Capital.

It is true that, as argued by the petitioner, the office of City Manager of the Capital does not appear in the election ballot pertaining to the Capital of Puerto Rico. The candidacy for the office of President of the United States does not appear in the ballot used in a general election either; yet it is well known that the candidate nominated by a convention of the winning party, at such general election, becomes President of the United States.

It is not amiss to state here the fact, of which we have taken judicial notice, that the petitioner, at the last general election, was a candidate of the Tripartite Puerto Rican Unification Party to represent the precinct of Santurce in the House of Representatives, and this occurred several months after the rendition in his favor of the judgment of this court whereby the reinstatement of the petitioner in the office of City Manager of the Capital was ordered. This attitude of the petitioner is in harmony with the construction to which we have referred, and tends to show his conviction that he could not continue holding the office of City Manager of the Capital after the lapse of the term of four years which was to expire on the second Monday in February, 1941.

If that has been the construction placed upon the statute by the various political parties, by the general public, and by the petitioner himself, it seems clear that the interpreta-

tion urged by the petitioner is at least a very doubtful one, and that this being so, we must hold that the official term of the City Manager of the Capital is four years, provided that during that period he observes good conduct.

Both the board and the appellant have cited various cases in support of their respective contentions which we do not propose to discuss, in order not to unnecessarily extend this opinion. We have examined them, however, and none of them is fully applicable to the case at bar, for they interpret statutes which, although resembling the one under discussion, are not identical with it, and it is well known that a slight difference between two statutes often produces diametrically opposed interpretations. Hence, in this case we have followed what we think is the best practice in the construction of a statute, namely, without disregarding the interpretation which may have been given to other similar laws, to study carefully its various provisions, harmonizing each with the others, so as to determine from the whole context what has been the purpose of the legislator.

For the reasons stated the motion filed by the Board of Commissioners of San Juan on October 27, 1941, must be sustained, and consequently it must be decreed that the judgment of this court of June 28, 1940, can not be enforced in so far as the same orders the reinstatement of the petitioner Dr. Carlos M. de Castro in the office of City Manager of the Capital; the term for which he was appointed having expired in February, 1941.

Mr. Justice Todd, Jr., took no part in the decision of this case.