## Mine Inspector Salaries

STAMBAUGH, Special Counsel, July 29, 1949.—You have asked us whether the increased salaries provided by the Act of May 26, 1949, P. L. 1846, can be legally approved for anthracite mine inspectors and bituminous mine inpectors.

The answer depends upon the interpretation of section 13 of article III of the Pennsylvania Constitution, which provides as follows:

"No law shall extend the term of any public Officer, or increase or diminish his salary or emoluments, after his election or appointment."

The practice of the Legislature of Pennsylvania has been to regulate the mining of anthracite coal and bituminous coal by separate laws.

However, the provisions relating to mine inspectors in the bituminous and anthracite regions are similar and the questions as to their right to the increased compensation will be considered in one opinion.

Section 5 of article II of the Anthracite Mine Law of June 2, 1891, P. L. 176, provides that upon the recommendation of the board of examiners the Governor shall appoint inspectors for the term of five years. Section 13 of article II provides that on petition of 15 or more coal operators or miners the court of common pleas may find that an inspector is neglectful of his duties, incompetent or guilty of malfeasance in office, and upon its certification to that effect the Governor shall declare the office of the inspector vacant, and appoint a successor.

The Act of June 8, 1901, P. L. 535, amended article II of the Act of June 2, 1891, and provides that anthracite mine inspectors shall be elected at the general election in November, but the candidates shall file with the county commissioners a certificate of the mine examining board that they have successfully passed the prescribed examination.

Section II of the same act provided that an inspector so elected should hold office for a term of three years and until his successor was duly elected and qualified.

Under this statute it was ruled in an opinion dated June 20, 1916, and entitled "In re Salary of Mine

Inspectors", by Deputy Attorney General Hargest, Op. Atty. Gen., 1915-1916, page 153, that an anthracite mine inspector was a public officer within the meaning of section 13 of article III of the Constitution; and that he was not entitled to receive an increase of salary during the term for which he was elected.

It will be noted that under the statute in force at the date of that opinion, an anthracite mine inspector was elected by the people at the general election, and for a definite period or term of three years.

Later it was ruled by the Supreme Court in Commonwealth ex rel. Woodring v. Walter, 274 Pa. 553, 557 (1922), that:

". . . The salary of the *elective* officer is fixed as of the date of his election, and no alteration in the amount thereof is permissible under the Constitution, . . ." (Italics supplied.)

The same ruling was also made in In re Appeal of Harry W. Bowman, 111 Pa. Superior Ct. 383, 386 (1934), In re Petition of Drake, 106 Pa. Superior Ct. 383, 387 (1932), and Jones v. Northumberland County, 120 Pa. Superior Ct. 132, 139 (1935).

The Act of May 17, 1921, P. L. 831, abolished the election of inspectors, and provided in section 8 that the Governor should appoint inspectors for a term of four years, from the names certified by the board of examiners.

Both the Act of June 8, 1901, and the Act of May 17, 1921, continued the provision for removal of inspectors by the court of common pleas.

The office of anthracite mine inspector is now regulated by section 9 of the Act of July 1, 1937, P. L. 2461, 52 PS §185(i), which provides:

"The tenure of office of anthracite mine inspectors appointed under this act shall be during good behavior,

subject to the provisions of section twelve of this act, and the Constitution of this Commonwealth."

Section 5 provides that after an inspector has served for a period of four years his certificate of qualification should become permanent.

Section 12 repeats the provision that upon petition of 15 miners or operators, the court of common pleas might certify that an inspector was neglectful, incompetent or guilty of malfeasance in office and that upon such certificate the Governor should appoint a successor.

Under this section an anthracite mine inspector no longer holds office for a definite period or term, as he had done previously, but is entitled to remain in office during good behavior until removed upon a finding of a court of common pleas under section 12 that he is neglectful, incompetent or guilty of malfeasance in office; or removed by the power by which he was appointed under section 4 of article VI of the Constitution.

Section 4 of article VI of the Constitution provides that:

". . . Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed."

The Supreme Court, however, has held in Milford Township Supervisors' Removal, 291 Pa. 46, 52 (1927), that this section ". . . is not applicable where the legislature, having the right to fix the length of a term of office, has made it determinable, by judicial proceedings, on other contingencies than the mere passage of time".

To the same effect are Weiss v. Zeigler, 327 Pa. 100, 105 (1937), Suermann et al. v. Hadley, 327 Pa. 190, 200 (1937), and Commonwealth ex rel. Houlahen v. Flynn, 348 Pa. 101, 103 (1943).

The anthracite mine inspector is therefore now entitled to hold office during good behavior, unless removed by a court of common pleas under the provisions above cited.

An official tenure "during good behavior" is for life, unless sooner determined by cause: Smith v. Bryan, 100 Va. 199, 40 S. E. 652 (1902), Ex Parte Hennen, 38 U. S. (13 Pet.) 230, 259 (1839).

The Supreme Court has uniformly held that section 13 of article III of the Constitution is applicable only to officers who are elected or appointed for *a definite or certain term or period of time.*

Thus in Commonwealth ex rel. v. Moffitt, 238 Pa. 255, 262 (1913), Mr. Justice Mestrezat held that an officer is within section 13 of article III "If he is chosen by the electorate for a definite and certain tenure".

This same language is repeated in Tucker's Appeal, 271 Pa. 462, 464 (1921).

In In re Appeal of Harry W. Bowman, 111 Pa. Superior Ct. 383 (1934), President Judge Trexler, speaking of article III, section 13, said (pp. 385, 386) :

". . . The standard fixed by numerous cases is that an officer to come within the constitutional prohibition of the above section is such as is chosen for a definite term. . . ."

In Jones v. Northumberland Co., 120 Pa. Superior Ct. 132, 139 (1935), Judge Rhodes said:

"It is apparent that the salary of Bowman was fixed as of the date of his election, and that an increase, by subsequent legislation, could not be allowed during the term for which he had been elected."

In Richie v. Philadelphia, 225 Pa. 511, 516 (1909), Mr. Justice Brown, quoting from the opinion of the Superior Court in the same case (37 Pa. Superior Ct. 190, 197) said that an officer is within section 13 of article III if "his office is for a fixed term".

In Finley v. McNair, 317 Pa. 278, 281 (1935), Mr. Justice Linn said:

". . . Other elements in the problem are whether the duties are designated by statute, whether the incumbent serves for a fixed period. . . ."

In Glessner's Case, 289 Pa. 86, 89 (1927), in speaking of section 192 of The General Township Act of 1917 authorizing the court of quarter sessions to remove a township officer, Mr. Justice Frazer said of this section:

". . . It refers to such officers as are chosen for a definite and certain time, to an office requiring the performance of duties of an important character and involving at least in part functions of government, in analogy to the rule applied in the definition of the term 'public officer' within the meaning of the constitutional provisions relating to the increase or reduction of salaries of such officers: . . ."

In Wiest v. Northumberland Co., 115 Pa. Superior Ct. 577, 578 (1935), President Judge Trexler said an officer is within section 13 of article III if "the term if [is] defined and the tenure certain".

In Alworth v. Lackawanna County, 85 Pa. Superior Ct. 349, 352 (1925), Judge Gawthrop said that a counsel for the Board of Registration Commissioners was not within section 13 of article III, because "his appointment is for no definite term".

In Commonwealth ex rel. v. Moore, 71 Pa. Superior Ct. 365, 368 (1919), Judge Henderson said:

"Where the term is definite and the tenure certain . . . the occupant of the place is a public officer" within section 13 of article III.

This decision was affirmed by the Supreme Court on the opinion of Judge Henderson, in Commonwealth v. Moore, 266 Pa. 100, 101 (1920).

It is true that the Superior Court has said in several earlier cases that an officer need not be elected or appointed *for a definite term* to come within the provi-

sion of section 13 of article III. See Evans v. Luzerne County, 54 Pa. Superior Ct. 44, 46 (1913), and Dewey v. Luzerne County, 74 Pa. Superior Ct. 300, 304, 309 (1920).

However, the decisions of the Superior Court have since conformed to the ruling of the Supreme Court. See Commonwealth v. Moore, 71 Pa. Superior Ct. 365, 367 (1919), Alworth v. Lackawanna County, 85 Pa. Superior Ct. 349, 352 (1925), Foyle v. Commonwealth, 101 Pa. Superior Ct. 412, 418 (1931), Kosek v. Wilkes-Barre Township School District, 110 Pa. Superior Ct. 295, 300 (1933), affirmed in 314 Pa. 18, In re Appeal of Harry W. Bowman, 111 Pa. Superior Ct. 383, 385, 386 (1934), and Wiest v. Northumberland Co., 115 Pa. Superior Ct. 577, 578 (1935).

In Saar v. Hanlon, 163 Pa. Superior Ct. 143, 147, 148 (1948), Judge Hirt, in holding that a city plumbing inspector was not an appointive officer within article VI, sec. 4 of the Constitution, said:

". . . Other elements in the problem are whether the duties are designated by statute, whether the incumbent serves for a fixed period. . . .

". . . Such inspector, unlike a public officer, is not appointed for a definite term. . . ."

Following the interpretation placed upon section 13 of article III in the above decisions, we are of the opinion that anthracite mine inspectors do not come within the constitutional prohibition, because:

1. Such inspectors are not appointed for a certain and definite term.

The words "extend the term of any public officer" imply that the officer is one who is serving for a term that *can be extended.* A term is defined as a fixed and definite period of time.

Thus in State v. Board of County Commissioners, 191 P. (2d) 670, 672 (1948), the Supreme Court of Montana said:

". . . 'Term' when applied to the holding of a public office, refers to a fixed and definite period of time.

"It is also held that permanency or continuity of the tenure is an element necessary to make the holder of a position a public officer."

Unless the incumbency was limited to a definite period of time, it would not be practicable to "extend" the term.

At any rate, a term, if it were "during good behavior", i. e., for life, could not be extended. To abolish the requirement of good behavior would not be an extension in the ordinary sense of the word. It would be abolishing the qualification or condition of the tenure, and making it possible for the incumbent to retain his office irrespective of his conduct.

In section 13 of article III the words "public officer" apply both to extending the term and to increasing the salary. The meaning of the words "public officer" would be the same whether the legislation extended his term or increased his salary. "His salary" therefore means the salary of an officer serving for a term.

Hence, an officer serving during good behavior would not come within the prohibition against extending the term or increasing the salary.

2. An appointment to serve during good behavior is for life, unless sooner terminated by cause, which, in this situation, would be a removal by a court of common pleas for neglect of duty, incompetence or malfeasance in office.

Therefore, if section 13 of article III should be held to include an anthracite mine inspector, the latter could never become entitled to the benefit of a legislative increase in salary, even though he served the Commonwealth with fidelity and distinction throughout the entire span of his life.

An interpretation which would produce such an unreasonable result and work such hardship, should not

be adopted: Duane v. Philadelphia et al., 322 Pa. 33, 38 (1936).

## Bituminous Mine Inspectors

Section 6 of article X of the Act of May 15, 1893, P. L. 52, provided that the Governor should appoint inspectors of bituminous mines for the term of four years.

Article XIII provided that upon petition of 15 miners or operators the court of common pleas might certify to the Governor a finding that an inspector neglected his duties or was incompetent or was guilty of malfeasance in office, and the Governor should then declare the office of such inspector vacant.

Section 5 of article XIX of the Act of June 9, 1911, P. L. 756, provided that the Governor should appoint, from the names certified to him by the examining board, a bituminous mine inspector for each district, for a term of four years.

Article XXI of the same act, 52 PS §791, provided for removal of an inspector by the court of common pleas for the neglect of duty, incompetence or malfeasance in office.

The Act of June 1, 1915, P. L. 706, 52 PS §732, amended section 4 of article XIX of the Act of 1911, relating to examinations for mine inspectors, providing as follows:

". . . Any person who has served as a mine inspector, or continuously for eight years, and has passed two consecutive examinations for the office of mine inspector, shall be exempt from taking any further examination, and shall continue in said office without any further examination unless removed or suspended, as provided by article twenty-one of the act of June nine, one thousand nine hundred and eleven (Pamphlet Laws, seven hundred and fifty-six), and Section four of the act of April fourteen, one thousand nine hun-

dred and three (Pamphlet Laws, one hundred and eighty)."

Article XXI of the Act of June 9, 1911 (52 PS §791) referred to, has already been summarized.

Section 4 of the Act of April 14, 1903, P. L. 180, 71 PS §1344, also referred to in the above quotation from the Act of June 1, 1915, provides that upon petition of the Secretary of Mines to the court of common pleas of any county within the inspection district, upon finding that an inspector, whether in the bituminous or anthracite field, has been guilty of neglecting his official duties or is physically incompetent or guilty of malfeasance in office, shall certify this finding to the Governor, who shall declare this office vacant and supply the vacancy.

For the reasons already stated in discussing anthracite mine inspectors, we are of the opinion that bituminous mine inspectors are not appointed for a definite term and are therefore not within the constitutional prohibition. The bituminous mine inspector presents, if anything, a stronger case. After four years of service, and a reappointment the incumbent enters upon a period of office during good behavior, a period of indefinite length without the necessity of any reappointment. His tenure continues without any further action by the Governor or any other official and by force of the Act of June 1, 1915, which provides that he "shall continue in said office without any further examination unless removed or suspended". The incumbent continues in office, not as a holdover, but by virtue of the statutory provision that he shall continue until removed. His office now is no longer controlled by any appointment and the provisions of section 3 of article III should therefore not apply to his case.

The history of the legislation for both anthracite and bituminous mine inspectors reveals that after years of experimenting with the various statutes providing for

definite terms of service, the legislature has provided that inspectors after acquiring the requisite knowledge and experience shall hold their offices permanently. The purpose clearly has been to provide permanent officials of proved knowledge and experience and to remove their tenure of office from the political vicissitudes of election or appointment.

In conclusion, we are of the opinion, and you are accordingly advised that:

1. Anthracite mine inspectors are entitled to receive the increase in salary provided by the Act of May 26, 1949.

2. Bituminous mine inspectors who have served continuously for four years, have passed consecutively two examinations and have been reappointed are entitled to receive the increase in salary provided by the Act of May 26, 1949.