## Staunton.

The Virginia Coal & Iron Co. and Others v. The Keystone Coal & Iron Co. and Others.

September 10, 1903.

Absent, Buchanan, J.*

1. Statutes—*Construction—Practical Construction in Case of Doubt.*— The practical construction put upon a statute for a long number of years by officials charged with its administration, and the acquiescence of the public in such construction, will, in cases of doubt, be regarded as decisive. It is allowed the same effect as a course of judicial decision.

2. Evidence—*Copies of Land Grants—Absence of Seal of Commonwealth— Code, Sec. 2350—Practical Construction.*—For more than two centuries the practical construction put upon the law which is now embodied in section 2350 of the Code, has been that it is not necessary to record the seal of the State annexed to land grants recorded in the office of the Register of the Land Office, but that only the grant itself and the plat and certificates of survey on which it is founded need be recorded, and this construction must prevail. Duly authenticated copies of such grants, containing no copy of the seal of the State, and not reciting that such seal was recorded, may, therefore, be received in evidence in the courts of this State.

3. Ejectment—*Patent Embracing Excepted Lands—Junior Patent—Burden of Proof as to Excepted Lands.*—If a plaintiff in ejectment claims under a junior patent, and the defendant under a senior patent, the exterior boundaries of which include lands excepted from his patent, and also the land embraced in the junior patent, the burden of proof is on the plaintiff to show that the land claimed by him is part of the land excepted in the defendant's patent. In ejectment the plaintiff must recover on the strength of his own title and not on the weakness of that of his adversary, and must establish his title to the identical land claimed by the defendant. The defendant's title will be deemed to be lawful until the contrary is shown.

*Judge Buchanan was detained at home by sickness.

Error to a judgment of the Circuit Court of Wise county, rendered September 12, 1901, in an action of ejectment wherein the defendants in error were the plaintiffs, and the plaintiffs in error were the defendants.

*Reversed.*

The opinion states the case.

*E. M. Fulton* and *Bullitt, Kelly & Hull,* for the plaintiffs in error.

*R. T. Irvine* and *Duncan & Sewell,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of ejectment brought in the Circuit Court of Wise county by the defendants in error against the plaintiffs in error, resulting in a verdict and judgment for the plaintiffs below for the land in controversy; and that judgment is now before this court upon a writ of error for review.

The plaintiffs claim title under a grant from the Commonwealth of Virginia to Harvey N. Horton, dated October 1, 1855, and connect themselves therewith. The defendants derive title under a grant dated January 30, 1796, from the Commonwealth of Virginia to Nathan Fields, Nathaniel Taylor, and John Johnston for 62,000 acres of land, the outside boundaries of which embrace the land in controversy. But the survey upon which that grant is founded includes 2,223 acres of prior claims, which are expressly reserved and excepted from the operation of the grant.

The controlling questions presented for decision are:

(1) As to the admissibility as evidence of a land office copy of the patent under which the plaintiffs claim, the objection to its admissibility being that it does not show that the lesser seal of the Commonwealth had ever been attached to the original patent; and,

(2) Upon whom the burden of proof rested to locate the excepted land in the senior patent.

The Circuit Court decided both questions favorably to the plaintiffs.

The propositions will be considered in the order stated.

(1) The law in force at the date of the plaintiffs' patent was substantially the same as that found in the present Code; the requirement being that the Register of the Land Office shall prepare the grant, and deliver it to the Governor, to be signed by him and sealed with the lesser seal of the Commonwealth, and returned to the Register, "who shall record the said grant, and the plat and certificate of survey on which it is founded." Code, 1887, sec. 2350.

It will be observed that the statute does not, in terms, require the Register to copy or record the seal attached to patents. He is not the custodian of the seal, and cannot, therefore, use the original to impress it upon the page of the patent book. The Secretary of the Commonwealth is the keeper of the seal, and the Register has no right to its possession or use.

The lesser seal is of delicate and complex mechanism, designed to prevent counterfeiting, and it cannot be reproduced by an ordinary penman. Code 1887, secs. 32, 33. The seal, it is true, is essential to the valid execution of a grant. Code 1887, sec. 35. It nevertheless appears that by the construction placed upon the statute in the land office, the lesser seal of the Commonwealth is not required to be recorded.

A similar statute in Kentucky has been repeatedly so construed by the court of last resort of that State. Thus in the case of *Hedden,* v. *Overton,* 4 Bibb, 406, the court said:

"(2) The second objection taken to the copy used by the plaintiff as evidence of his title is that it had no seal of the Commonwealth, nor any exemplification or imitation of such seal.

"Whatever the law has required to be recorded as a part of

the patent ought, no doubt, to be contained in a copy before it can be admitted as evidence; but according to the plain grammatical construction of the language used by the Legislature, the seal of the Commonwealth is not required to be recorded.

"The law provides that when the patent shall be signed by the Governor, 'it shall be sealed with the seal of the Commonwealth, and then entered of record;' thus plainly requiring that only which is to be sealed to be recorded; or, in other words, it is the grant or patent which is to be sealed, and it is the grant or patent which is to be recorded.

"It is true this construction presupposes the seal not to be a part of the grant, nor in strict propriety is it a part. It is, to be sure, a necessary appendage to the grant, but the very idea of its being an appendage implies that it is not a part of it. Were the meaning of the Legislature obviously opposed to a strict grammatical construction there would be no doubt that the latter should give way to the former; but we do not apprehend such to be the case in the present instance, and we are the more inclined to adhere to the grammatical construction on this occasion, because it is found to be in conformity to the practical exposition of the law; for it has been the uniform practice from the passage of the law to the present time, with the exception of the first four years after the separation of this State from Virginia, to record the grants for land without annexing the seal, or any emblem of the seal, of the Commonwealth to the record. If a different exposition should now be given to the law, it is manifest that the object of the Legislature in making copies of the records from the Register's office evidence would be almost entirely defeated; in fact, no other exposition would be practical, for there is no way in which the seal could be recorded in strict propriety. The most that could be done would be to record the fact that the original grant was sealed, for a scrawl, or any other emblem or imitation of the seal, would not, strictly speaking, be a record of the seal."

The following quotation from the opinion of the same court in *Sneed* v. *Ward*, 5 Dana, 187, is equally apposite: "Were it conceded that, though the grant was made a matter of record, it passed no title unless it was sealed, still we are clearly of the opinion that the copy, as certified, is legal and conclusive evidence that the title was vested in Fry, the grantee. A statute of this State makes certified copies of patents for land legal evidence of title, and not only is the official seal of the grantor no part of the grant required to be registered and certified, but it would be unreasonable to expect a *fac simile* copy of the actual seal of the King or of the Colonial Governor; and, moreover, if a seal was necessary, the fact of registering the grant, and certifying it as a complete and sufficient title, authorizes the presumption that the original was perfect, and properly authenticated." *Bell* v. *Fry*, 5 Dana, 341, reaffirms the doctrine of the foregoing cases.

These cases are well reasoned, and, as observed, construe a statute similar to the Virginia statute, which enhances their value as authority.

But whatever might have been said of the correctness of that interpretation of the statute as an original proposition, an examination of the records of the land office shows that the law has been continuously so construed from the year 1623 to the year 1895. During all that period, the records fail to disclose a single instance in which the lesser seal of the Commonwealth has been recorded with a patent.

In the case of *Smith* v. *Bryan*, 100 Va. 199, 40 S. E. 652, this court said:

"The practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The Legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction.

"Contemporaneous construction and official usage for a long period, acquiesced in by persons charged with the administration of the law, have always been regarded as legitimate aids in the construction of statutes."

The fact that for all these years the present contention seems never to have been raised before in this court is conclusive evidence of the acquiescence of the bench and bar of the State in the construction placed upon the statute by the Registers of the Land Office.

The argument *ab inconvenienti* against a different interpretation ought, under the circumstances, to be controlling.

Indeed, for this court now to hold the recordation of all patents for the period named invalid, and that office copies are not admissible as evidence, would unsettle land titles throughout all the Commonwealth, and result in incalculable mischief. The case of *Reusens* v. *Lawson,* 91 Va. 226, 21 S. E. 347, relied on to sustain a contrary view, was the case of a private deed. In respect to such instruments, the custom is universal for clerks to record the scroll by way of .seal, or an exemplification or imitation of a seal, where one is affixed to the original deed. In that case the original deed was executed upwards of fifty years before, and while the office copy disclosed no trace, scroll, or device to show the fact, there were many circumstances which strongly tended to prove that the original instrument had been sealed. The court, under the authorities, properly held that the question whether the original was or was not sealed ought to have been submitted to the determination of the jury. The distinction between that case and the one in hand is obvious, and it cannot be regarded as authority for the present contention.

There was no error, therefore, in the ruling of the court in admitting the office copy of the patent in question as evidence.

The remaining question for consideration is:

(2) Where the plaintiffs claim under a junior patent, and the

defendants under a senior patent, the exterior boundaries of which include excepted lands and likewise the land embraced in the junior patent, upon whom does the burden of proof rest to locate the excepted land? In other words, is it incumbent upon the plaintiffs to show that the land for which they sue is within the boundaries of the excepted lands, or is the onus upon the defendants to maintain the converse of that proposition?

As remarked, the trial court imposed the burden upon the defendants, and, in the absence of satisfactory evidence on the subject, the jury necessarily returned a verdict in favor of the plaintiffs.

The opinion of the court in that regard is demonstrably in conflict with the rules of evidence applicable to actions of ejectment.

The doctrine that where a plaintiff in ejectment claims under an inclusive grant, embracing excepted lands, the onus rests upon him to establish his outside boundaries, and locate the excepted lands, and to show that the land claimed by the defendants is within the exterior bounds of the plaintiff's grant, and is not included in the excepted lands, although at one time vigorously assailed, is now too firmly established in this State to admit of debate. *Gutherie* v. *Lewis,* 1 T. B. Mon. 142; *Madison's Heirs* v. *Owens,* Litt. Sel. Cas. 281; *Bryan* v. *Willard,* 21 W. Va. 65; *Stockton* v. *Morris,* 39 W. Va. 432, 19 S. E. 531; *Scott* v. *Ratliffe,* 5 Pet. 81, 8 L. Ed. 54; *Land Grant Co.* v. *Dawson,* 151 U. S. 586; 14 Sup. Ct. 458, 38 L. Ed. 279; *Reusens* v. *Lawson,* 91 Va. 226, 21 S. E. 347; *Harman* v. *Stearns,* 95 Va. 58, 27 S. E. 601.

On principle, it is not perceived how that proposition can be differentiated from the case in judgment, where the defendants claim under a senior patent containing excepted lands, and the plaintiffs under a junior patent embracing, as they allege, a part of the excepted lands.

It is argued that the supposed hardship in the former case is self-imposed, in that the plaintiffs, or those under whom they claim, took the grant with the exception in it; while in the latter case it is said that the plaintiffs do not claim under, or in privity with, the senior patent.

There would seem to be as little excuse, however, for the claimants of expected lands under the junior patent, for they alone are to blame for having purchased land without ascertaining whether or not it was embraced within the boundaries of lands excepted from a previous grant.

It is no greater hardship to require the plaintiffs to show that the land in controversy is within the excepted lands than to compel the defendants to prove the contrary. But it is not a question of balancing hardships. The action of ejectment does not involve a comparison of titles, but the law, in its wisdom, has seen fit to impose upon a plaintiff, who seeks to recover possession of land from another, the burden of recovering upon the strength of his own title, and not upon the weakness of the title of his adversary, and to prove the title which he asserts.

As was said by this court in a recent case:

"A contrary rule would enable the plaintiff to call upon the defendant to assist him in removing the difficulties out of his way, and require the defendant to become the auxiliary of the plaintiff, and supply by his proof what the plaintiff had failed to establish by his own." *Harman* v. *Stearns*, 95 Va. 70, 27 S. E. 605. At page 71, in the same case, it is said: "This proposition, indeed, flows inexorably from a principle which may be said to be axiomatic, that in actions of ejectment the 'burden is upon the plaintiff to show his title to the identical land claimed by the defendant.' " *Land Grant Co.* v. *Dawson, supra.*

Concretely stated, the case submitted to the jury was as follows:

The plaintiffs introduced a junior patent, connected them-

selves with it, and proved that the defendants were in possession of the land embraced within its metes and bounds, and rested.

Thereupon the defendants introduced a senior patent for 62,-000 acres of land, containing an exception of 2,223 acres, and proved that the land in controversy was within the exterior boundaries of their patent, and rested.

The question is, in that state of the proofs, who was entitled to prevail?

Manifestly, the defandants were, because, in the absence of evidence to the contrary, the presumption is that their possession was a lawful possession. The law never presumes a trespass. Therefore, the court ought to have told the jury that, unless they believed from the evidence that the land in controversy was within the exception, they must find for the defendants; which would have been tantamount to a declaration by the court that the burden was upon the plaintiffs to show that the land claimed by them was a part of the excepted lands.

A different statement of the law would contravene the established doctrine that a plaintiff in ejectment "must always, in the first instance, make out a clear and substantial possessory title to the particular land in controversy; for possession is always *prima facie* evidence of title, and the party in possession cannot be deprived of his possession by any person but the rightful owner, who has the right to the possession." *Reusens* v. *Lawson,* 91 Va. 226, 254, 21 S. E. 347, 356; Code 1887, sec. 2735.

This may be a very inconvenient rule for plaintiffs in actions of ejectment, but the logic of it is inexorable. They (the plaintiffs) are the actors, and maintain that the defendants are in possession of their land. It involves no hardship, therefore, to require them to make good that assertion by proof, as a condition precedent to a right of recovery.

There are other assignments of error, but it is believed they are practically controlled by the decision of the questions al-

ready disposed of, or, at least, are not likely to arise on a future trial of the case. A detailed discussion of them is for that reason unnecessary.

It follows from what has been said that the judgment of the Circuit Court of Wise county must be reversed, and the case remanded for a new trial to be had therein, not in conflict with this opinion.

*Reversed.*