# Wytheville

BENJAMIN M. SMITH, ET AL. V. LYMAN M. KELLEY, ET AL.

June 19, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and Chinn, JJ.

The opinion states the case.

*Thomas W. Phillips, Lawrence W. Douglas* and *John S. Barbour*, for the petitioners.

*William C. Gloth* and *Albert V. Bryan,* for the respondents.

HUDGINS, J., delivered the opinion of the court.

Benjamin M. Smith and Christopher B. Garnett filed in this court their original petition for mandamus, alleging that pursuant to chapter 167, Acts of 1930 (Code 1930, section 2773 (10) *et seq.*), Arlington county had duly adopted the "county manager" plan of organization and government; that the voters of the county as authorized by that act duly elected a county board of five members chosen from the county at large who qualified on January 1, 1932, for a term of four years; that two of these members —one on June 1, 1933, and the other on December 11, 1933—tendered their resignations to the judge of the Circuit Court of Arlington county, who accepted the same and immediately appointed Benjamin M. Smith and Christopher B. Garnett to fill the unexpired terms caused by these resignations; that each appointee forthwith qualified and assumed the duties of office which each continued to perform without question from the respective dates of their appointment until May 29, 1934.

On the latter date, Lyman M. Kelly, chairman of the county board, without notice or previous intimation to either of petitioners, at a regular meeting, ruled that the action of the circuit court judge in undertaking to fill the two vacancies was null and void; that the vacancies occasioned by the resignation of the two members elected by the people of the county had never been filled; that petitioners were not members of the board, and that it was the duty of the three elected members to fill the two vacancies. This ruling was approved by the other elected members of the board and the three forthwith attempted to fill the vacancies by voting for two other qualified citizens of the county, Edmund D. Campbell and J. L. May. The clerk of the circuit court refused to administer the oath to Campbell and May. Thereupon Mr. Kelly, the

chairman, who by his ruling has provoked this difficulty, in his capacity as notary administered the oath, whereupon the three elected members proceeded to recognize Campbell and May as *de jure* as well as *de facto* members of the board.

Petitioners further allege that they demanded of the three elected members that petitioners be permitted to attend the meetings of the board, discuss and vote as members upon all matters affecting the interests of the county, as they had done from the time of their appointment until May 29th, and that the county treasurer pay each the sum of $50 for the month of May, the amount of compensation allowed each member of the board, and that these demands were denied. To this petition the three elected members, the county treasurer, Edmund D. Campbell and J. L. May were made defendants. They appeared and demurred to the petition on four grounds, but the only ground urged before us is that the judge of the Circuit Court of Arlington county has no power to appoint anyone to fill the vacancies in question.

Respondents contend that the county board has the same authority to fill vacancies in its body that the General Assembly has given to the councils of cities.

The power of a city council to elect a qualified citizen of the municipality to fill a vacancy within the council with certain limitations is given in express terms to the council by Code, section 2983. Respondents base their contention upon the language italicized below in section 2773 (19), Code 1930. The whole section reads thus:

"Board possesses general power of management.—Except as modified by the preceding sections in this chapter, in counties adopting either plan of government provided for herein, the board shall have, possess, and exercise the general management of the affairs of the county, and in addition to such powers and duties as are designated and imposed by this chapter, shall exercise and perform all the powers and duties now authorized or imposed by general law or special act on the board of supervisors of such

county in so far as they are not inconsistent with the provisions of this chapter and *shall have all the powers conferred by general law on city councils."* (Italics ours.)

█ If a literal meaning is given to the above language, the "county board" or the "county board of supervisors," as the case may be, of any county adopting either of the plans and organizations permitted would be endowed with all the power formerly exercised by the old boards of supervisors plus all powers given by general law to the council of a city. A casual examination of the different chapters of the Code granting powers to municipalities shows clearly that the General Assembly did not intend to give to such a county all the powers, duties and responsibilities thus granted to municipalities. Among such powers is found not only the right and duty to construct and maintain streets and sidewalks, but a liability to persons injured by the negligence of the municipality in failing to properly perform its duties in this regard. Another power granted to municipalities is the right to issue merchant licenses and franchises to public service corporations and the like. All such powers of the municipality are usually exercised through the council acting for and in behalf of the corporate body. Surely the General Assembly did not intend in the language quoted to clothe the county board with such duties and responsibilities.

█ There is a fundamental distinction between municipal corporations and county organizations. "Municipal corporations proper are called into existence, either at the direct solicitation or by the free consent of the people who compose them. Counties are local subdivisions of a State, created by the sovereign power of the State, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former organization is asked for, or at least assented to by the people it embraces; the latter is superimposed by a sovereign and paramount authority. A municipal corporation proper is created mainly for the in-

terest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are, in fact, but a branch of the general administration of that policy." *Hamilton County* v. *Mighels,* 7 Ohio St. 109, 118-9; *Fry* v. *Albemarle County,* 86 Va. 198, 9 S. E. 1004, 19 Am. St. Rep. 879; *Roper* v. *McWhorter,* 77 Va. 223.

While the chapter of the Code in question and other pertinent sections have greatly enlarged the powers, duties and responsibilities of the counties, this fundamental distinction has been generally regarded.

Whether the legislature intended to restrict the county board by "all powers conferred by general law on city councils" to the organization and method of the exercise of power by a city council or to include within the terms all power granted by general law to the municipalities as distinguished from the power in the city councils, is not necessary for us to decide in this case. The only power which the county board here contends is within the meaning of language used, is the power to fill a vacancy arising in its own membership.

Arlington is one of the 100 counties (exclusive of cities) into which the Commonwealth is divided. Vacancies in the governing bodies of all the counties were, during the existence of the county court, filled by the judge of that court. See Code 1873, section 86; Code 1887, section 106, Acts of 1897-8, p. 687, ch. 649. When the county courts were abolished this power and duty was imposed upon the judges of the circuit courts, where it has continued to be reposed by section 136 of the Code of 1919. Not only has this been the general policy of the Commonwealth

under the old system of county organization since 1869, but the provisions of chapter 109D (Code Supp. 1932, section 2773 (24) *et seq.*), of the Acts of 1932 (which is an addition to the county board provided for in chapter 109C [Code 1930, section 2773 (10) *et seq.*], under which the county of Arlington was reorganized) authorizes two additonal systems of county government [see sections 2773 (24) to 2773 (39), Code Supp. 1932], and under each system it is expressly provided that any vacancy on the board of supervisors shall be filled by the judge of the circuit court (section 2773 (27), Code Supp. 1932). Thus for a period of more than sixty-five years the method of filling such vacancies has been followed with entire approval by the people of the Commonwealth.

■ "In determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the legislature did not intend to innovate upon, unsettle, disregard, alter, violate, repeal or limit a general statute or system of statutory provisions, the entire subject matter of which is not directly or necessarily involved in the act. *Coal, etc., R. Co.* v. *Conley,* 67 W. Va. 129, 67 S. E. 613; *Twentieth St. Bank* v. *Jacobs,* 74 W. Va. 525 [82 S. E. 320, Ann. Cas. 1917D, 695]." See *Keister's Adm'r* v. *Keister's Ex'rs,* 123 Va. 157, 162, 96 S. E. 315, 1 A. L. R. 439.

The origin of this peculiar and dragnet language used in section 2773 (19) is found in an act approved March 23, 1912 (chapter 349). This act, while general in terms, was framed to apply to Arlington county, and reads thus:

"That the boards of supervisors of counties having a density of population greater than three hundred per square mile * * * are hereby vested with the same powers and authority as are now vested or which may hereafter be vested in the councils of cities and towns by virtue of the Constitution of the State of Virginia, or the acts of the Assembly passed, or which may hereafter be passed, in pursuance thereof.

"Provided, that all laws enacted by boards of super-

visors under authority of this act shall be submitted to and approved by the judge of the circuit court of the respective counties, after hearing testimony of all parties desiring to be heard to be taken as in common-law cases, showing the necessity for such laws and police regulations, or in opposition thereto."

In 1916 a similar act was adopted (Acts 1916, ch. 102) enlarging the provisions of the above act to include counties adjacent to cities containing a population of 125,000 or more. Similar acts were adopted in 1920 and 1924 and carried in the Code of 1930 as section 2743a (now repealed). The provisions of these acts were applicable to Arlington county.

The petition charges and the demurrer admits that the language here in question, since the act of 1912 became effective, has from time to time been construed by the Circuit Court of Arlington county, and in each instance the different judges of that court have consistently held that the power to fill vacancies on the board of supervisors or on the "county board," as the governing body of that county is now called, was lodged in the judge of the circuit court and not in the board itself.

Judge Whittle in *Smith* v. *Bryan,* 100 Va. 199, 204, 40 S. E. 652, 654, in discussing the question of contemporaneous construction of statutes, said:

▪ ■ "So, also, the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction.

"Contemporaneous construction, and official usage for a long period by persons charged with the administration of the law, have always been regarded as legitimate aids in the construction of statutes. Sutherland on Stat. Con., section 309." *Atlantic & D. R. Co.* v. *West,* 101 Va.

13, 42 S. E. 914; *Virginia Coal & I. Co.* v. *Keystone Coal Co.,* 101 Va. 723, 727, 45 S. E. 291; *Lipscomb* v. *Nuckols,* 161 Va. 936, 172 S. E. 886, 890.

■ We have, then, from 1869 to 1930, a settled method of filling vacancies applicable to the board of supervisors of all the 100 counties. This policy in express terms is, by the act of 1932, continued in force under the two new systems of county organization and government permitted by the recent acts of the General Assembly. To construe the doubtful import of the language used in section 2773 (19)' as respondents contend would change by implication this policy in force for more than half a century, and would be contrary to the construction placed upon similar language by different judges of, and acquiesced in by the people of Arlington county, for some twenty-two years, and would give to the administrative board of that county a power denied to the boards of ninety-nine other counties, a result clearly not contemplated by the legislature.

For the reason stated we are of opinion that petitioners were legally appointed members of the county board of Arlington, and as such each is entitled to the possession and the emoluments of that office. A mandamus will issue.

EPES, J., dissenting.