**Howard AVENS et al., Plaintiffs,**
v.
**B. K. WRIGHT. et al., Defendants.**
**BOARD OF SUPERVISORS OF BUCHANAN COUNTY et al., Plaintiffs,**
v.
**Glyn PHILLIPS, etc., Defendants.**
Civ. A. Nos. 69–C–25–A, 69–C–102–A.

United States District Court,
W. D. Virginia,
Abingdon Division.
Argued July 30, 1970.
Decided Oct. 27, 1970.

**680**

S. Strother Smith, III, James R. Moore, Abingdon, Va., for plaintiffs Howard Avens and others.

Andrew P. Miller, Atty. Gen. of Va., M. Harris Parker, Chief Deputy Atty. Gen., William M. Phillips, Walter H. Ryland, Asst. Attys. Gen., for J. Aubrey Matthews, Judge of the Circuit Court of Washington County.

William W. Eskridge, Penn, Stuart & Eskridge, Abingdon, Va., for Lindy Mack Seamon.

David D. Brown, Commonwealth's Atty., Washington County, Abingdon, Va., for Dan G. Stevens, R. L. Brewer, and Robert H. Snodgrass, Jr.

T. L. Hutton, Abingdon, Va., for George B. Hutton and John S. Kelly.

John A. Paul, Harrisonburg, Va., for C. Richard Campbell, Hugh M. Herald, B. K. Wright, and Everette Hagy.

Glen M. Williams, Jonesville, Va., for plaintiffs Bd. of Supervisors and others.

Andrew P. Miller, Atty. Gen. of Va., M. Harris Parker, Chief Deputy Atty. Gen., William M. Phillips, Walter H. Ryland, Asst. Attys. Gen., Richmond, Va., for Glyn Phillips and Raymond Boyd, Judges of the Circuit Court of Buchanan County, Virginia.

William W. Eskridge, Penn, Stuart & Eskridge, Abingdon, Va., for Ellis Viers, Auty Branham, and E. M. Coleman.

Before BUTZNER, Circuit Judge, and MacKENZIE and MERHIGE, District Judges.

BUTZNER, Circuit Judge:

In these two actions, citizens of Washington County, Virginia, and the supervisors of Buchanan County, Virginia, challenge the constitutionality of Va. Code Ann. §§ 15.1–571 through 15.1–581 which set out the procedure for reapportioning county magisterial districts, and § 24–145 which provides for filling vacancies in county offices. They complain that the reapportionment statute, by its own terms and when read with § 24–145, permits a circuit court to redistrict a county and then to appoint supervisors, who are elective officers, to vacancies created by the redistricting. The plaintiffs in the Washington County action also protest that one magisterial district in Washington County has twice as many supervisors as the other districts, and plaintiffs in the Buchanan County action assert that the procedure used to reapportion the county denied them due process of law.

The statutes apply generally throughout the state to a substantial number of similarly governed counties, and the circuit judges, when discharging their statutory duties, perform a state function pursuant to statewide policy. For these reasons a three-judge court was convened pursuant to 28 U.S.C. § 2281 (1964). Cf. Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Sailors v. Kent Board of Education, 387 U.S. 105, 108, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). Unlike the statutes under consideration in Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L. Ed.2d 656 (1967), and Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed. 2d 643 (1967), where three-judge courts were not required, the statutes challenged here are of more than local concern.

Since the cases raise closely related questions of fact and law, we consolidated them for trial. We hold that the statutes do not violate either the federal or state constitutions, that the procedure followed in reapportioning Buchanan County did not deny the plaintiffs due process of law, and that the plaintiffs are not entitled to injunctive relief on these issues. Dual representation for one Washington County magisterial district offends, however, both the equal protection clause of the Fourteenth

Amendment and § 111 of the Virginia Constitution.

### I.

Article VII of the Virginia Constitution sets out the basic framework for the organization of county government. Subject to the power of the General Assembly to provide otherwise, counties are divided into magisterial districts, from which one supervisor is elected for a four-year term. Virginia Code Ann. § 24-145 (1969) empowers the judge of the circuit court to fill a vacancy on the board of supervisors by appointing a person to the unexpired term of his predecessor.[1]

Virginia's statutory procedure for reapportioning magisterial districts, Va. Code Ann. §§ 15.1-571 through 15.1-581 (1964), as amended (Supp.1970), is over 100 years old. It permits a county board of supervisors, or fifty qualified voters, to petition the circuit court for reapportionment. After a hearing, the judge may, through commissioners if need be, rearrange, diminish, or increase the number of magisterial districts. See generally, P. Martin, County Reapportionment in Virginia, 55 Va.L.Rev. 1167 (1969).

Before reapportionment, Washington County was divided into seven magisterial districts ranging in population from 9,311 to 2,449 persons. Upon petition filed by the board of supervisors in January 1967, the circuit court appointed a commission to rearrange the county. In March 1968, the court accepted a plan proposed by the commission to lay out seven new magisterial districts having comparatively equal populations. The incumbent board of supervisors, whose terms expire on December 31, 1971, was retained in office, but because the new Madison district had no resident supervisor representing it, the court appointed Lindy M. Seamon to serve as the Madison supervisor until December 31, 1971.

Soon after the judge appointed Seamon, several local residents petitioned for rescission of his order but he dismissed their case. Rosenbaum v. Seamon, No. 1167 (Washington Co., Feb. 10, 1969), writ of error refused, 210 Va. lxxxiii (Oct. 14, 1969). Seamon then sought a writ of mandamus against the board of supervisors, which had refused to seat him. The local circuit judge disqualified himself and a judge designated from a distant part of the state granted the writ and ordered that Seamon be seated. Seamon v. Wright, No. 1235 (Washington Co., Aug. 7, 1969). The present action was then initiated to annul Seamon's appointment and to delay the reapportionment of Washington County until either a regular or special election of county supervisors is held.

Like Washington County, Buchanan County was divided prior to reapportionment into magisterial districts with significant imbalance in population. According to the 1960 census, 15,905 people lived in its largest district and 2,891 in its smallest. In August of 1968, the circuit judge, after a public hearing on a petition for reapportionment, appointed a commission to redistrict the county. In due course the commission submitted a plan increasing the number of magisterial districts from five to seven. Over the exceptions of the board of supervisors, the court approved the plan and appointed supervisors for the two additional districts for terms expiring at the same time as the five supervisors that composed the old board. The board then petitioned this court to nullify the reapportionment or to order special elections in the two districts represented by appointed supervisors.

### II.

The plaintiffs' principal attack on the Virginia statutes is three-pronged. First, they challenge the power of the judiciary to create a vacancy in a legislative body through reapportionment and

---

1. Section 24-145 was repealed in 1970, but it is to remain in effect until 1980. Acts of Assembly, 1970, c. 462.

then to fill the vacancy by appointment. This dual function, they contend, violates the doctrine of the separation of governmental powers, which they assert is made applicable to the state through the due process clause of the Fourteenth Amendment. Second, they claim that because some magisterial districts remain represented by elected supervisors, citizens living in magisterial districts represented by appointed supervisors are denied equal protection of the law. And third, they contend that as rural voters, they are denied equal protection of the law because vacancies in city and town councils can be filled by the council rather than the circuit court.

■ The plaintiffs have suffered no constitutional wrong solely because the General Assembly, in exercising its authority to prescribe the manner for filling vacancies in public office, has delegated the responsibility for selecting interim officers to the state courts. Even if the power vested in the courts by the reapportionment statute were viewed as legislative in character, "the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments." Sweezy v. New Hampshire, 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957). As the first Mr. Justice Harlan wrote in Dreyer v. People of State of Illinois, 187 U.S. 71, 84, 23 S.Ct. 28, 32, 47 L.Ed. 79 (1902):

> "Whether the legislative, executive, and judicial powers of a state shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the state. And its determination one way or the other cannot be an element in the inquiry whether the due process of law prescribed by the 14th Amendment has been respected by the state or its representatives when dealing with matters involving life or liberty."

These principles demonstrate that the due process clause does not embrace the federal concept of the separation of powers so as to render unconstitutional the Virginia statutes that authorize circuit judges to fill vacancies on boards of supervisors.

■ Nor does the reapportionment statute violate the equal protection clause of the Fourteenth Amendment. It is now well settled that once the right to vote has been granted, no part of the electorate can be denied equal protection of the law. Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). And courts are enjoined to scrutinize a statute that limits the franchise. Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). If the restriction is the product of invidious discrimination, Harper v. Virginia Bd. of Elections, 383 U.S. at 666, 86 S.Ct. at 1081, 16 L.Ed.2d at 172, or if it does not promote a compelling state interest. Kramer v. Union Free School District, 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), it is void. But if the qualification of the franchise suffers from neither of these defects—on its face or in its application—its constitutionality may be sustained. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Lassiter v. Northampton County Bd. of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959).

■ The magisterial districts in both Washington and Buchanan Counties were so grossly malapportioned that the need for reapportionment was readily apparent. The reapportioned districts achieve a greater equality of population than existed before, and there is no indication of gerrymandering. The plaintiffs do not challenge the need for reapportionment, but they invoke the equal protection clause to delay it until either a special or general election is held.

■ We are of the opinion that the decision of the circuit courts to institute reapportionment immediately did not invidiously discriminate against the plain-

tiffs. In the first place, out of a judicial reluctance to disrupt the orderly conduct of official business, malapportioned legislative bodies have been permitted to continue to function until the next regular election. E. g., Mann v. Davis, 238 F.Supp. 458 (E.D.Va.1964); cf. Maryland Citizens for a Representative General Assembly v. Governor of Md., 429 F.2d 606 (4th Cir. 1970). But the states are not bound to adhere to this schedule in devising a mechanism to correct the wrong of malapportionment. Cf. Avery v. Midland County, Texas, 390 U.S. 474, 485, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). The judgment of when to effect reapportionment most conveniently is typically left to the court having jurisdiction over the reapportionment action. See WMCA, Inc. v. Lomenzo, 238 F.Supp. 916 (S.D.N.Y.), aff'd, 382 U.S. 4, 86 S.Ct. 24, 15 L.Ed.2d 2 (1965).

In the second place, all citizens in the county are treated in much the same manner, for neither the supervisors whom the circuit judges retained nor the supervisors appointed to represent new districts serve constituencies identical with the old. In the absence of any evidence to indicate that the appointed supervisors will represent interests other than those of the districts in which they reside, they hold office in a posture almost identical to the previously elected officers. In 1971 every member of the board will be dependent on the electorate to retain him in office should he seek re-election, and until then, no member has to answer to any other persons for his actions. Certainly the interests of the state were served by the prompt reform of county government without delaying reorganization until the next general election and without incurring the expense of a special election.

■ There is little merit to the plaintiffs' claim that they are denied equal protection because city and town councils are authorized by Virginia statutes to fill their own vacancies.[2] In

Virginia, municipal and county governments have mutually exclusive jurisdictions, and though boards of supervisors and councils are, generally speaking, both legislative bodies, their origin, function, and powers differ greatly. See Smith v. Kelley, 162 Va. 645, 174 S. E. 842, 844 (1934). The Constitution allows units of state governments to be organized flexibly so they may be responsive to local needs. Cf. Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L. Ed.2d 656 (1967). And state statutes need not provide for uniform territorial application. Mason v. Missouri, 179 U. S. 328, 334, 21 S.Ct. 125, 45 L.Ed. 214 (1900).

### III.

The Board of Supervisors of Buchanan County assert that the reapportionment proceedings violated the due process clause of the Fourteenth Amendment. They make a number of allegations, which may be summarized as follows: (1) they were denied a hearing before a fair and impartial court; (2) they were denied the right to "raise issues" and introduce evidence; and (3) they were denied an appeal. In support of the first charge, the board alleges that the circuit judge, a Democrat, ordered the county reapportioned so that two more Democrats could be added to the board to change its political composition from Republican to Democratic. They charge that the judge was motivated by political considerations and by his financial interest in a bank which is a depository of county funds.

■ The need to reapportion the county was manifest. The population of the magisterial districts ranged from approximately 16,000 to 3,000. We find no credible evidence that the judge was motivated by political or financial considerations in granting the petition for reapportionment. On the contrary, it appears that it would have been an abuse of discretion to have denied the

---

2. Va.Code Ann. § 15.1–808 (1964). Even this statute provides for judicial appointment of interim councilmen if the vacancies constitute a majority of the council.

petition in the face of the gross variance in the districts' population.

The commission selected by the judge to reapportion the county was bipartisan. We find from the testimony of the members, which we credit, that neither the judge nor anyone in his behalf attempted to influence the commission; that aside from explaining to the commission that they must redistrict according to population and not according to the number of voters, the judge did not communicate with the commission; that it was the commission on the motion of a Republican member that decided the county should be divided into seven magisterial districts; and that political considerations played no part in determining the boundaries of the districts. In sum, the record does not support the charge of bias.

■ Nor was the board denied procedural due process. In accordance with Virginia law, the petition for reapportionment was posted at the courthouse and at each voting place. After thirty days, the court conducted a hearing on the petition at which any citizen of the county could have intervened as a party. The evidence discloses that the commission appointed by the court met regularly at a public place in the courthouse, and had it been asked to do so, it would have considered the views of any person. None of the plaintiffs, however, sought to appear before it. Their complaint that they were denied a hearing before the commission is not supported by the facts.

■ Insofar as possible, the commission followed the 1960 census tracts which, though old, provided the most reliable data. However, when it was necessary to divide tracts to create districts of substantially equal population, the commission was compelled to use other means of estimating the population within a portion of a tract. It did this by examining recent aerial surveys which showed the number of houses in the area, and multiplying the number of houses by the average number of people per household. In the absence of evidence tending to show a different population distribution from that which the commission computed, we find no error of constitutional proportions in this method of redistricting.

After the commission presented its plan, the supervisors tendered exceptions, which, although received and filed, were not mentioned in the order approving the report. The supervisors sought no appeal and the order of the court is now final.

On this record it is difficult to say whether the circuit judge overruled the exceptions by granting summary judgment on the report, or whether he declined to consider them. The plaintiffs suggest that the latter possibility occurred, and we will assume that this is so. It does not follow, however, that the court's action deprived the plaintiffs of due process of law. Section 15.1–575 of the Code of Virginia allows any citizen of the county at or before the hearing on the petition for reapportionment to intervene and contest the proceedings. This section further provides that after intervention "the case shall be proceeded with as other cases on the docket, except that the matter shall be determined by the court and not by a jury." Neither individually nor as a board did the supervisors seek to intervene, as authorized by this section. Any failure to secure a hearing on the exceptions stems from the plaintiffs' failure to intervene and not from a denial of due process.

■ The supervisors' contention that they were unconstitutionally denied an appeal is unsubstantiated. The short answer is they sought no appeal. While the Supreme Court of Appeals of Virginia has not ruled on this point, it appears that Virginia law does not forbid an appeal. Virginia Code Ann. § 15.1–575 (1964) treats a reapportionment proceeding "as other cases on the docket," and § 8–462(3) (c) (1957) allows any person thinking himself aggrieved to seek a writ of error from a final order in any civil case. It therefore seems

evident that a person who properly intervenes in reapportionment proceedings may prosecute an appeal. In Rosenbaum v. Seamon, No. 1167 (Washington Co., Feb. 10, 1969), writ of error refused, 210 Va. lxxxiii (Oct. 14, 1969), which sought removal of Seamon from the board of supervisors, an order dismissing the case was held to be nonappealable. *Rosenbaum*, however, was a collateral attack on the reapportionment proceedings. It is not authority for the board's contention that no direct appeal lies from reapportionment proceedings.

The plaintiffs also complain that the circuit judge appointed Democrats to the vacancies on the county board. But they have made no showing that the appointments were fraudulently procured, or that the appointees are corrupt, incompetent, insensitive to the interests of their constituents, or that they would not have been elected to office had the county been lawfully apportioned. On this record the selection of the appointees violates no rights of the plaintiffs, and certainly the bare allegation and proof of their political affiliation presents no claim on which relief can be granted.

## IV.

The Bill of Rights of the Virginia Constitution proclaims in § 5 "That the legislative, executive and judicial departments of the State should be separate and distinct; * * *" This admonition is repeated in § 39 of the Constitution:

"Except as hereinafter provided, the legislative, executive and judicial departments shall be separate and distinct, so that neither exercise the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time."

The plaintiffs contend that the legislature violated these constitutional provisions by authorizing circuit judges to redistrict counties and fill resulting vacancies.

Were this a case without precedent, there might be difficulty in reconciling Virginia's constitutional doctrine of separation of powers with the authority conferred by the legislature on circuit judges.[3] In resolving this issue, however, our obligation under Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is to apply the state constitution as interpreted by the Virginia Supreme Court of Appeals.

Section 56 of the Virginia Constitution provides in part:

"The manner of * * * filling vacancies in office, in cases not specially provided for by this Constitution, shall be prescribed by law, * * *"

Acting under this grant, the legislature empowered circuit judges to fill vacancies on boards of supervisors, regardless of the cause of the vacancy. Va.Code Ann. § 24–145. And it specifically provided that this power could be exercised even though the vacancy was created by the court's own order in redistricting a county. Va.Code Ann. § 15.1–576. Thus the issue raised by the plaintiffs is whether delegation of the appointive power to judges exceeds the scope of § 56 of the constitution because it conflicts with the doctrine of separation of powers found in §§ 5 and 39.

In Smith v. Kelley, 162 Va. 645, 174 S.E. 842 (1934), the Court ordered the seating of two judicially appointed interim Arlington County supervisors. The board of supervisors contended that a special statute conferred upon it all the powers of a city council and that consequently it, rather than a court, should fill its vacancies. But in inter-

3. The Virginia Commission on Constitutional Revision criticizes the appointing power given judges. Nevertheless it proposes "leaving the general problem of appointments by judges to the legislative process." Commission on Constitutional Revision, Report: The Constitution of Virginia, 210–212 (1969).

preting the conflicting statutes, the Court said that judicial appointment—authorized since 1869—was too well recognized a procedure to conclude that the legislature had intended to make a change. While *Smith* did not expressly reach the constitutional issue, it seems evident that the court's heavy reliance on long acquiescence in the delegation of appointive power to judges indicates its constitutional validity. Moreover, Rosenbaum v. Seamon, No. 1167 (Washington Co., Feb. 10, 1969), writ of error refused, 210 Va. lxxxiii (Oct. 14, 1969), and Seamon v. Wright, No. 1235 (Washington Co., Aug. 7, 1969), upheld the constitutionality of the judiciary's power to fill vacancies on county boards. Even if under the Rules of Decisions Act [28 U. S.C. § 1652 (1964)], we are not bound by trial courts' interpretations of state law, we must yet give them due regard. Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 851 (2d Cir. 1967); Wright, Federal Courts, § 58 (2d ed. 1970). The Virginia Supreme Court has upheld other instances of the delegation of legislative power to the courts if, as here, there has been an express constitutional provision authorizing the General Assembly to act. E. g., Falls Church v. County Board of Arlington County, 166 Va. 192, 184 S.E. 459 (1936). We conclude, therefore, that the challenged statutes do not violate §§ 5 and 39 of the Virginia Constitution.

■■■ Other contentions of the plaintiffs require only brief discussion. Sections 5, 18 and 111 of the constitution govern the election of state officers, including supervisors, but they do not control the method in which vacancies to these elective offices shall be filled. Moreover, the plaintiffs are not being taxed against their consent—a practice prohibited by § 6 of the constitution. It is their representatives in the state legislature who determined how empty seats on county boards should be filled, and the counties are but subdivisions of the state.

## V.

■■■ One aspect of Washington County's reapportionment does violate the constitution. In Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the Supreme Court held that when a county legislative body is composed of representatives of single member districts, the districts must be substantially equal in population. Six of the seven Washington County districts are represented by one supervisor but Harrison District, which has approximately the same population as the others, is represented by two. This dual representation appears to have occurred because the newly apportioned Harrison District embraced the residences of two of the incumbent supervisors. Consequently, a person in Harrison District has twice the representation of citizens living elsewhere in the county. This inequality violates the equal protection clause. Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), and it is contrary to the express provision in § 111 of the Virginia Constitution that each magisterial district shall have one supervisor. See Seamon v. Wright, No. 1235 (Washington Co., Aug. 7, 1969) (dicta).

Because the state circuit court conducted the reapportionment of Washington County, we defer to it for correction of Harrison District's dual representation. Moreover, the state court is in a much better position to act than are we. Therefore, we will retain jurisdiction for 90 days to permit the state court to take such steps as it deems appropriate to secure equal representation. At the expiration of this time, we will either entertain a motion for final judgment or if need be, to consider a petition for further relief. Cf. Scott v. Germano, 381 U.S. 407, 409, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965).

Since we find no invalidity in the Buchanan County reapportionment proceedings, that case will be dismissed.