Charlie W. DUNCAN et al., Plaintiffs,

v.

TOWN OF BLACKSBURG, VIRGINIA, et al., Defendants.

Civ. A. No. 72-C-145-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Sept. 28, 1973.

Frederick T. Gray, Williams, Mullen & Christian, Chesterfield, Va., for plaintiffs.

W. H. Jolly, Kime, Jolly, Clemens & Canterbury, Salem, Va., for Town of Blacksburg.

Andrew P. Miller, Atty. Gen., Stuart H. Dunn, Vann H. Lefcoe, Asst. Attys. Gen., Commonwealth of Virginia, Richmond, Va., for intervening defendants.

Before WIDENER, Circuit Judge, DALTON, Chief District Judge, and TURK, District Judge.

## OPINION

WIDENER, Circuit Judge:

In this action, citizens of the Town of Blacksburg and Montgomery County, Virginia challenge the constitutionality of certain annexation statutes in Virginia, which are Chapter 25 of Title 15.1 of the Va.Code, §§ 15.1–1032 to 1058. They contend that the statutes are unconstitutional as applied in the Town of Blacksburg's annexation of a portion of Montgomery County. Specifically, they assert that since December 31, 1972 ap-

proximately 12,573 residents of the Town of Blacksburg have had no representation on the Town Council, that total lack of representation shall continue to exist until the next election, July 1, 1974, and that the resulting discrimination constitutes a denial of equal protection of the laws guaranteed by the Fourteenth Amendment.

Because the statutes in question apply throughout the State, and because the annexation court, in discharging its statutory duty, performs a State function pursuant to statewide policy, a three-judge court was convened pursuant to 28 U.S.C. § 2281. Cf. Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Sailors v. Kent Board of Education, 387 U.S. 105, 108, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). We hold that the statutes do not violate the Fifth or Fourteenth Amendments, nor are they unconstitutional in their application to the Town of Blacksburg's annexation of a portion of Montgomery County. Thus, plaintiffs are entitled to neither injunctive nor declaratory relief.

I

Plaintiffs[1] brought this suit as a class action on November 1, 1972, but have made no further move to proceed with the case as a class action. Since they have standing to sue, the case will be decided on the merits. Federal jurisdiction is claimed under 28 U.S.C. § 1331 and, by a supplemental complaint filed on December 29, 1972, under 42 U.S.C. § 1983.

The facts have been stipulated. At midnight on December 31, 1972, 15.4 square miles of Montgomery County became a part of the Town of Blacksburg, Virginia by virtue of a decree of an annexation court, pursuant to the provisions of Chapter 25, Title 15.1 of the Code of Virginia. The original decree was entered by the annexation court on October 23, 1970, and an appeal was taken by the county to the Supreme Court of Virginia. On January 17, 1972, the Supreme Court affirmed the judgment of the annexation court and, because under Virginia law annexation can only become effective at midnight on December

---

1. The plaintiffs, at the time this action was commenced and at all times material to this action, were adult residents of Montgomery County, Virginia, meeting the necessary requirements to register and vote in the elections of that county. Each was also at such times a resident of that portion of the county which, at midnight December 31, 1972, became a part of the town of Blacksburg, Virginia, and thus able to participate in all town elections after December 31, 1972.

13 of the 17 plaintiffs were intervening parties opposing annexation in the annexation case in the State court. In Virginia, annexation by a town of adjoining area of a county is accomplished by a judicial proceeding. Va.Code § 15.1–1032 et seq. When the county, and 13 of the plaintiffs here, lost the annexation case in the State circuit court, the county appealed to the Virginia Supreme Court. Upon the petition of the county, an appeal and *supersedeas* was awarded December 29, 1970. The record does not indicate, and we have not been advised of, any opposition to the issuance of the *supersedeas* by the 13 plaintiffs here who were parties to the suit in the State court. Indeed, it may be inferred that plaintiffs favored such procedure. Thus, the writ of *supersedeas*, and the unavoidable delay

which always accompanies appeals, were the reasons the effective date of annexation was logically set by the Virginia Supreme Court for the 31st of December following its decision.

In Virginia, every annexation is effective at midnight on the 31st day of December following the entry of the final order of the court. Va.Code § 15.1–1041. The payments due the county from the town for loss of sales tax and ABC funds under the decree of annexation are paid by calendar year. Real estate levies (reserved for local taxation, Va.Const. Art. X, § 4) are effective January 1st of each year, but are payable on December 5th. Va.Code §§ 58–796, 58–963. Licenses, which of course are taxed, generally expire December 31st of each year. Va. Code § 58–247. Other reasons for the choice of January 1st as the first day under a new government suggest themselves, but it suffices to say that not only is the date of January 1st fixed by statute as the effective date for annexation, it is quite consistent with the assessment and collection of revenues for the localities involved, and is entirely consonant with an orderly and fair transition from one form of government to another in the annexed area.

31, amended the decree to make the annexation effective at midnight, December 31, 1972.

At the time of the annexation trial, the Town of Blacksburg consisted of 2139 acres with an estimated population of 10,427. The annexation increased the size of the town to approximately 11,700 acres and its population of approximately 23,000 persons, including 6,900 resident students of Virginia Polytechnic Institute and State University.

The governing body of the town is a Town Council consisting of six councilmen and a mayor. The Council exercises general local governmental power over the territory and residents within town boundaries including the power to levy taxes, adopt criminal ordinances, and adopt ordinances affecting the property rights of citizens and the use of property within the Town of Blacksburg. Pursuant to the Town Charter, three members of the council were elected to four year terms on May 9, 1972. The remaining three members and the mayor are serving four year terms which do not expire until July 1, 1974. Since the election of May 9, 1972 was held subsequent to the Supreme Court's decision that the residents in the 15.4 square mile area would become citizens of Blacksburg at midnight, December 31, 1972, but before the effective date of the annexation, none of these residents were eligible either for election or to vote in the May, 1972 election.

The newly annexed citizens have their first right to vote for Town Council members (three) and the Mayor, in May, 1974, the date of the next election. No person in the older part of the town may vote for more, or is in any way entitled to vote in the meantime unless the newly annexed residents may also vote in the same election.

Seeking analogy to the reapportionment cases, e. g., Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), plaintiffs contend that the effect of the annexation is to create, albeit temporarily, two legislative districts with unequal voting rights in violation of the Fourteenth Amendment.

Plaintiffs' prayer for relief, however, contains no request for vacation of the office of any of the seven elected persons on the Town Council or for an immediate election in which citizens of the newly annexed portion of Montgomery County would be entitled to vote and stand for office. Instead, they seek to enjoin the Town of Blacksburg from annexing any portion of Montgomery County or exercising any governmental prerogatives over the disputed territory. They also seek a declaratory judgment that Chapter 25, Title 15.1 of the Code of Virginia is unconstitutional and void under the Fifth and Fourteenth Amendments to the Constitution of the United States.

The Town argues that, since 13 of the 17 plaintiffs here, who were parties to the case in the State court, did not raise the federal questions when they could have, and did not appeal the same in any event, the case is barred by the doctrines of res adjudicata and estoppel by judgment (collateral estoppel).

While it may well be that 13 of the 17 plaintiffs are bound by res adjudicata, 4 of them are not, because they were not parties to the suit or privies. They took no part and had no laboring oar. Partmar v. Paramount Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954); Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (Oct. 1876 term); Drummond v. U. S., 324 U.S. 316, 65 S.Ct. 659, 89 L.Ed. 969 (1945); Thaxton v. Vaughan, 321 F.2d 474 (4th Cir. 1963).

As to the four not barred by res adjudicata, collateral estoppel is ineffective to bar their suit because no decision on the federal questions was made in the State court. Commissioner v. Sunnen, 333 U.S. 591, esp. 599–601, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

We are not faced with a case in which a federal question has been raised in and decided by a State court.

## II

■ In the case of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the Supreme Court held that the right of franchise is "a fundamental political right, because preservative of all rights." Since that time, the Court has consistently held in a long line of cases that, in situations involving elections, the states are required to insure that each person's vote counts as much, insofar as it is practicable, as any other person's. This principle, in varying contexts, has been applied in congressional elections, Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), state legislative elections, Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and local elections, Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). The consistent theme of those decisions is that the right to vote in an election is protected by the United States Constitution against dilution or debasement.

■ Plaintiffs argue that because there are no town elections until May, 1974, the effect of the annexation is to disenfranchise the new residents of Blacksburg, and thus create two legislative districts within the town with unequal voting rights. Analogizing the situation to the one man, one vote decisions, plaintiffs contend that Reynolds v. Sims and its progeny control the result to be reached in this case.

The reapportionment cases relied upon, however, are inapposite to the situation presented here. Unlike the voters' dilemma in *Wesberry, Reynolds,* and *Avery,* plaintiffs' lack of representation is not the result of a State sanctioned, built-in bias favoring small districts, e. g., Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), nor is it the reflection of any intentional effort by the State to disenfranchise newly annexed citizens. Assuming that there may exist, for a limited period of time, some representational disparity between old and new residents

of the Town, if so, it is temporary, unintended, and self-correcting. Indeed, there is nothing here that would justify the wholesale disruption of local government throughout the State that would result from the recission of the annexation decree, or declaring the Virginia annexation laws invalid.

The authorities, although limited, support the result we reach. In Avens v. Wright, 320 F.Supp. 677 (W.D.Va.1970), a case very nearly on all fours in principle with the present case, a three-judge court sustained the constitutionality of the Virginia county reapportionment statutes in the face of an equal protection challenge. It was claimed that because some magisterial districts remained represented by elected supervisors, citizens living in newly created magisterial districts represented by appointed supervisors were denied equal protection of the law. The court reasoned that "[i]f the restriction is the product of invidious discrimination, Harper v. Virginia Board of Elections, 383 U.S. [663] at 666 [86 S.Ct. at 1081, 16 L.Ed.2d at 172], or if it does not promote a compelling state interest, Kramer v. Union Free School District, 395 U.S. 621, 627, [89 S.Ct. 1886, 23 L.Ed. 583] (1969), it is void. But if the qualification of the franchise suffers from neither of these defects—on its face or in its application—its constitutionality may be sustained. Turner v. Fouche, 396 U. S. 346 [90 S.Ct. 532, 24 L.Ed.2d 567] (1970); Lassiter v. Northampton County Bd. of Elections, 360 U.S. 45 [79 S. Ct. 985, 3 L.Ed.2d 1072] (1959)." 320 F.Supp. at 682.

In Pate v. El Paso County, Texas, 324 F.Supp. 935 (W.D.Tex.), aff'd. 400 U.S. 806, 91 S.Ct. 55, 27 L.Ed.2d 38 (1970), a case quite like the instant case on its facts, the redistricting of a county resulted in persons from one district being put into another district whose commissioner, because of a staggered term system of election, would not come up for reelection for another two years, while the commissioner in their old district would have been up for reelection in the

same year in which they were transferred. The court found no equal protection violation, holding that the classification was reasonable and not arbitrary or invidious, and the Supreme Court affirmed. In Robinson v. Zapata County, Texas, 350 F.Supp. 1193 (S.D.Tex.1972), on facts similar to *Pate,* but with results more exaggerated, where district lines were redrawn and renumbered so that many persons would be unable to vote for four years, the court held that no federal question existed as to the validity of the election of commissioners elected from the various districts after the redistricting ordinance had been approved but before its effective date. Since the Supreme Court had affirmed the result in *Pate,* the district judge in *Robinson* concluded that the Constitution did not require invalidation of the elections or of the redistricting itself.

In the instant case, it should be noted that no citizen of the annexed area is denied the right to vote for the governing body of the Town. To the contrary, all citizens are treated equally once they become citizens. But the logical product of plaintiffs' argument, if accepted, would be to invalidate every annexation statute which does not require that a new election be held immediately after every annexation to enable new citizens of the town to vote at once. The effect would, of course, be highly disruptive of the continuity and orderly processes of local government, a result which the State has a compelling interest in avoiding. In this regard, the Supreme Court has stated that "the privilege to vote in a State is within the jurisdiction of the State itself, to be exercised as the State may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals in violation of the Federal Constitution." Carrington v. Rash, 380 U.S. 89, 91, 85 S.Ct. 775, 777, 13 L.Ed.2d 675 (1965); Pope v. Williams, 193 U.S. 621, 632, 24 S.Ct. 573, 48 L.Ed. 817 (1904).

Until the moment of annexation, each of the plaintiffs was a citizen of Montgomery County, the Board of Supervisors of which was the governing body. They had the same right as every other citizen of the County to vote for members of the Board and were under no control whatsoever of the town government of Blacksburg. After December 31, 1972, the citizens of the area annexed into the town were, of course, subject to the ordinances of the Town of Blacksburg. After annexation, they had precisely the same right as every other resident of the town to vote for members of the Town Council. They were treated by law exactly the same as any other citizen of Blacksburg, no more and no less. We fail to find in the treatment of these citizens any invidious discrimination. Although it is undoubtedly true that they were annexed into the town against their wishes, while citizens of the county, they were treated the same as other county citizens, and when they became citizens of the town, they were treated the same as other town citizens.

From the undisputed facts, it is difficult to find any discrimination at all against the recently annexed residents of Blacksburg, much less the arbitrary or invidious discrimination required to invalidate the annexation. "The Equal Protection Clause does not, of course, require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious." *Avery,* 390 U.S. at 484, 88 S.Ct. at 1120. When the State, as here, provides a fair plan of transition from one form of government to another for its citizens which are affected by the growth of municipalities, it meets its burden under the challenge presented when it treats all its citizens the same, so long as they are under county government and, later, when they are under municipal government. To hold otherwise, and declare the annexation invalid, would amount to a complete destruction of the Virginia statutory plan which contains no arbitrary or invidious discrimination, and which provides for the orderly growth of municipalities, in which subject the State certainly has a

compelling interest. "The Constitution does not require that a uniform strait-jacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems." *Avery*, 390 U.S. at 485, 88 S.Ct. at 1120.

Since we are of opinion there is no arbitrary or invidious discrimination in the Blacksburg annexation proceedings, and that Chapter 25, Title 15.1 of the Code of Virginia falls clearly within the State's constitutional prerogatives, it follows that relief should not be granted.

An order consistent with this opinion is this date entered.